UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAYS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV208-PPS /MGG |
| | ) | |
| LIPPERT COMPONENTS, INC. and | ) | |
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

_____*consolidated with* _____

| | | |
|---|---|---|
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV327-PPS/MGG |
| | ) | |
| DAYS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Days Corporation filed the first action in these consolidated patent cases

apparently taking the tack that the best defense is a good offense.  In the operative

complaint against Lippert Components, Inc. and Innovative Design Solutions, Inc.,

Days seeks a declaratory judgment of non-infringement of all of the claims of U.S. Pat.

Nos. 6,584,385 and 6,885,924. [DE 36.] For ease of reference, and unless otherwise

needed, I will refer to Lippert and IDS together in this opinion as "IDS." The request for

a declaratory judgment is on all conceivable theories of patent infringement (even those

not really in controversy), including theories of direct infringement, both literal and under the doctrine of equivalents, and indirect infringement, which could include theories of both contributory infringement and inducement.  [DE 36 at ¶¶55-56, ¶¶61-62.]  Days seeks partial summary judgment on some of its claims for a declaratory judgment of non-infringement. [DE 154.]  IDS opposes the motion and has also moved to strike certain evidence relied upon by Days.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## Unasserted Claims and Theories of Infringement

The first issue relates to patent claims and theories of infringement no longer asserted in the case. Specifically, Days seeks a declaration via summary judgment that it is not infringing claims 2-6, 8-11, 13-14, 16-25, 27-28, 30-31, and 33 of the '385 Patent or claims 1-17 of the '924 Patent, because Lippert and IDS's infringement contentions do not assert that Days has infringed those claims.  [DE 156 at 15.]  Similarly, Days tells me that IDS's "expert report and deposition have made it crystal clear that there is no genuine dispute in this case with respect to anything other than direct literal infringement by Days."  [DE 156 at 16.]  Days therefore wants summary judgment on

theories of infringement no longer asserted, namely contributory infringement,

inducement or infringement under the doctrine of equivalents.

IDS responds that it's no surprise that its experts didn't opine on the other claims

or theories because there is no real beef between it and Days on those patent claims or

many of the unasserted theories of infringement. [DE 180 at 14.] As a result, there is no

subject matter jurisdiction over those matters. "Article III courts have subject matter

jurisdiction only if there is an actual case or controversy." *Ameranth, Inc. v. Domino's*

*Pizza, LLC*, 792 Fed.Appx. 780, 783 (Fed.Cir. 2019) (citing *Medimmune, Inc. v. Genentech,*

*Inc.*, 549 U.S. 118, 126-27 (2007)).  In patent cases, "[t]he existence of a case or

controversy must be evaluated on a claim-by-claim basis."  *Fox Group, Inc. v. Cree, Inc.*,

700 F.3d 1300, 1307 (Fed. Cir. 2012), (quoting *Jervis B. Webb Co. v. So. Sys., Inc.*, 742 F.2d

1388, 1399 (Fed. Cir. 1984)).

Furthermore, because jurisdiction must exist throughout the pendency of

litigation, not only at the time a complaint is filed, "a counterclaimant must show a

continuing case or controversy with respect to withdrawn or otherwise unasserted

claims." *Streck v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1283 (Fed. Cir. 2012).

"A party claiming declaratory judgment jurisdiction has the burden of showing 'that

the facts alleged, "under all the circumstances, show that there is a substantial

controversy, between the parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment."'" *Id*. at 1281-82, quoting

*Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 130, 1343 (Fed.Cir. 2007) (quoting

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

In *Streck*, the Federal Circuit concluded that the district court lacked jurisdiction

over a counterclaim seeking a declaratory judgment of the invalidity of patent claims

that the patentee had not included in its infringement allegations, even though its

pleading had originally included more and broader claims of infringement.  *Streck*, 665

F.3d at 1283-84.  In such circumstances, the circuit held that the party seeking a

declaration of invalidity had not "met its burden of showing a continuing case or

controversy with respect to the unasserted claims."  *Id*. at 1284.

The case before me appears to be analogous to *Streck* and *Fox Group*, in that IDS's

complaint "alleged infringement of 'one or more claims,' but [the patentee]

subsequently narrowed the scope of its asserted claims before the court ruled on the

parties' summary judgment motions."  *Fox Group*, 700 F.3d at 1308.  Days attempts to

distinguish *Streck*, contending that there the party seeking the declaratory judgment of

noninfringement had specifically limited its pleading to the patentee's "asserted

claims," so that the court's jurisdiction was narrowed when the claims asserted by the

patentee were narrowed. [DE 188 at 4-5.]  Here, by contrast, Days says its pleading

broadly sought a declaratory judgment of noninfringement encompassing all claims

and theories of infringement of both of IDS's patents, and that IDS has never

affirmatively disclaimed any allegations of infringement.  [*Id*.]

4

Days misreads, or at least overreads, the Federal Circuit's *Streck* opinion.  As is the case here, the patentee's asserted claims and infringement contentions in the course of the litigation were narrower than initially pled in the complaint.  *Streck*, 665 F.3d at 1284.  The Federal Circuit treated these narrowed contentions during litigation as sufficient to trigger the declaratory judgment plaintiff's burden "of showing a continuing case or controversy with respect to the unasserted claims."  *Id*.  Days errs in suggesting that *Streck* holds that jurisdiction is imperiled only based on a more explicit disclaimer of allegations of infringement.

The Federal Circuit in *Streck* approved the similar reasoning of a district court that found "it lacked declaratory judgment jurisdiction over patent claims that were initially asserted in a broad complaint and subsequently not included in the narrower scope of claims alleged to be infringed."  *Id*. at 1282-3, citing *Hoffman-La Roche Inc. v. Mylan Inc.*, No. 2:09-0192, 2009 WL 4796736, at *5 (D.N.J. Dec. 9, 2009).  Even though a patentee's "decision to change its position did not automatically divest the court of jurisdiction," when the party seeking declaratory judgment thereafter failed to offer evidence to show a continuing case or controversy, the district court in *Streck* correctly concluded that it did not have jurisdiction over the unasserted claims.  *Id*. at 1284.  *See also Fox Group*, 700 F.3d at 1308 ("There was no case or controversy with respect to the unasserted claims at the time of the summary judgment motions; therefore the district court did not have jurisdiction of the unasserted claims.")  Similarly here, Days's

motion for partial summary declaratory judgment will be denied in part as to the now unasserted claims of the '385 and '924 Patents, over which the court lacks jurisdiction.

IDS would have me analogize the same reasoning to the unasserted *theories of infringement*, although it cites no authority applying that analysis.  I am unpersuaded that the analogy holds.  The unasserted claims represent a forgoing of an assertion of injury by means of infringement.  If a particular claim is no longer alleged to be infringed, there is no justiciable case or controversy with respect to that claim, and jurisdiction is lacking.  By contrast, the abandonment of a *theory of infringement* is not a jurisdictional matter, but a shift in legal strategy or analysis, which is a matter on which summary judgment can be granted if it was previously raised in the relevant pleadings. On the basis of that reasoning, and in view of the lack of authority supporting IDS's argument to the contrary, I will consider whether Days is entitled to partial summary judgment on theories of infringement that IDS lacks evidence to support.

In response to Days' motion, IDS concedes that they "did not assert in either their preliminary or final infringement contentions that Days infringed any claims o[f] the '385 Patent or the '924 Patent directly under the doctrine of equivalents or indirectly by contribution or inducement," and also that "under the Local Patent Rules, LCI/IDS may not assert any such theories of infringement at trial."  [DE 180 at 14-15.]  These concessions support the conclusion that Days is entitled to a declaratory judgment as a matter of law that it has not infringed the '385 or '924 Patents by way of the doctrine of equivalents or indirectly by contribution or inducement.  This partial summary

6

judgment is granted with respect to Counts I and II of Days' Second Amended

Complaint for Declaratory Judgment.  [DE 36.]

*   *   *

It is now on to the meat of the case, the claims of the '385 and '924 patents for

which there is a genuine controversy between the parties. I'll start with the claims of the

'385 patent, including the method claims included therein, and then I will turn to the

method claims of the '924 patent.

**<u>Claims 1, 7 and 12 of the '385 Patent</u>**

Claim 1 of the  '385 Patent reads:

> 1. An assembly for correcting the attitude of any selected
> portion of structure, the assembly comprising:
>     a controller configured to connect to and control one or more
> jacks operable to change the attitude of a structure; and
>     a proportional two-axis tilt sensor connected to the controller
> and configured to be supported on the structure, the ***tilt sensor being configured
> to provide analog signals to the controller***, which represent the degree of
> longitudinal pitch and lateral roll of the portion of the structure the sensor is
> supported on, the controller being additionally configured to move a selected
> portion of the structure into a desired attitude by commanding movement of the
> entire structure into an attitude where the tilt sensor signals match a preselected
> reference value corresponding to the desired attitude of the selected portion of
> the structure, thereby allowing any portion of the structure to be corrected to any
> desired attitude within a range of attitudes despite the location of the tilt sensor
> and allowing the tilt sensor to be located anywhere in the structure.

[DE 156-3 at 38, col. 17, ℓℓ.4-23 (emphasis added).]  Claims 7 and 12 of the '385 Patent are

both claims dependent on claim 1.  In the *Markman* opinion issued in this case, I

construed the phrase "analog signal" in claim 1 to mean "output signal of the sensor

that is not a digital signal."  [DE 41 at 26.]

7

Days seeks a determination as a matter of law that it does not infringe claim 1, 7 or 12 because its sensors use output digital signals, not analog ones, and its controllers receive a digital rather than analog signal.  [DE 156 at 9.]   Days uses two types of what it calls "sensors" in its Accused Products.  One is the Analog Devices Dual Axis Accelerometer ADXL213.  The other is the MEMSIC Dual Axis Accelerometer MXC6245XU.  TouchTronics, Incorporated is Days' supplier of these components.  Days asserts as undisputed fact that these sensors emit digital, rather than analog, signals. According to Days, its sensors incorporate an analog to digital converter, so that the output of the sensor has already been converted to a digital signal.  [DE 156 at 17.] There is no dispute that for the controller to perform its function, it must ultimately process digitized signals reflecting the position of the structure.  [DE 156 at 17; DE 180 at 15.]

What evidence does Days cite in support?  First, it points to pages 3-4 and 11 of its rebuttal expert report by Dr. Robert Sturges.  [DE 156-4 at 4-5, 12.]  The reference from page 3 to 4 of Dr. Sturges' report is a quote from the Abstract of the '385 Patent ("[t]he tilt senor provides analog signals to the controller...").  It is not Dr. Sturges' observation or conclusion concerning the ADXL213 or MXC6245XU.  As IDS put it in the related motion to strike, here "Dr. Sturges discusses only the claimed invention in the '385 Patent, so that portion of his testimony is not relevant to the fact alleged" by Days.  [DE 179 at 2.]

On page 11 of his report, Dr. Sturges states that "[t]he Accused leveling system employs sensors that render serial digital signals to the processor within the controller." [DE 156-4 at 12.]  In its motion to strike, IDS challenges Dr. Sturges' statement as "merely conclusory and…excludable under Federal Rule of Civil Procedure 37(c)(1)." [DE 178 at 1.]  The report offers no explanation of underlying facts and reasoning supporting Dr. Sturges' statement.  Relative to this conclusion, IDS contends that "Dr. Sturges does not explain how the tilt sensor included in the Days Accused Leveling System is constructed or how it functions, and he never even identifies what the tilt sensor is or how it allegedly renders serial digital signals."  [DE 179 at 3.]  This is an accurate critique of the conclusion as expressed in Dr. Sturges' report.

In opposition to the motion to strike, Days cites Dr. Sturges's deposition, in which there was a series of questions and answers concerning the format of the signal output by the ADXL and MEMSIC accelerometers.  [DE 189 at 3.]  Whatever the discussion there, however, the deposition is not what Days cites in its summary judgment motion in support of its assertion of fact.  The cited portions of Dr. Sturges' report on pages 3-4 and 11 will be disregarded because they do not provide adequate support for the conclusion that Days' leveling system uses sensors that emit a digital signal.  The motion to strike this material will be denied as moot because the challenged portions of the report are rejected as unpersuasive rather than inadmissible.

Next Days cites the "manufacturer specifications for the two sensors."  [DE156 at 9, citing Exhibits 5 and 6 to its summary judgment motion.]  A pincite is given for the

ADXL manual, which on its first page states that "[t]he outputs are digital signals...."
[DE 156-6 at 2.]  With respect to the other accelerometer, no page citation is offered to
locate the relevant support within MEMSIC's 11-page manual.  [DE 156 at 9.]  It is not
the court's job to comb the record for evidence supporting (or disputing) a party's
summary judgment assertion.  *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415
(7th Cir. 2019).

      Days also cites the deposition testimony of Alice Poseley, the corporate designee
for TouchTronics, which is Days' supplier of the ADXL and MXC components.  [DE 156
at 9.]  Although Days cites other portions of the deposition, I readily see that Poseley
testified that both the Analog Devices accelerometer and the MEMSIC accelerometer
"send digital signals directly from the unit."  [DE 156-7 at 12, 39:18-23.]  All this
considered, I can say that Days has offered evidence that could support a conclusion
that the signal output of each of these accelerometers is a digital rather than analog
signal.  [DE 156-4 at 12; DE 156-6 at 2; DE 156-5 at DE 156-7 at 35:1-21; 39:5-23.]

      But in opposition, IDS contends that "the parties dispute what constitutes the
claimed 'proportional two-axis tilt sensor' in the Days Accused Leveling System, which
is a question of fact."  [DE 180 at 5.]  In other words, whether the ADXL and MXC
accelerometers issue a digital signal may not carry the day for Days' summary
judgment argument if there is a dispute of fact about whether those components
constitute the "tilt sensor" referred to in the language of Claim 1 of the '385 Patent:  a
"tilt sensor being configured to provide analog signals to the controller."  [DE 156-3 at

38, col. 17, ℓℓ.11-12.] IDS argues that the accelerometers are not the "tilt sensor," which is instead correctly understood as "the device that actually senses tilt and is labeled by the manufacturers of the two accelerometers that house the sensors as a '2 Axis Sensor' and a 'Sensor.'" [DE 180 at 5.] Further, IDS asserts that "[t]hose sensors indisputably output analog signals in accordance with this Court's construction of claim 1." [*Id*.]

IDS relies on the functional diagrams of the MEMSIC and Analog Devices accelerometers as shown below. [DE 180 at 9.]



These diagrams are lifted from MEMSIC's and Analog Devices' technical specifications [DE 156-5 at 2; DE 156-6 at 2], but the dotted red and blue lines added by IDS graphically illustrate the parties' contrary positions on what constitutes the "tilt sensor" within the meaning of claim 1. In his declaration, IDS's expert, Dr. Massoud Tavakoli, cites these diagrams in support of his statement that the element of each accelerometer labeled as "sensor" is a "two-axis tilt sensor [that] generates a continuously variable output signal that is proportional to the degree of tilt the sensor experiences relative to gravity." [DE 181 at ¶¶33, 34.] Dr. Tavakoli identifies such signals as "analog." [*Id*.] *See also* Tavakoli Deposition, DE 180-2 at 292:7-293:20.

The record before me discloses a dispute of material fact as to whether the entire accelerometer is the "tilt sensor" within the meaning of claim 1, or whether a smaller component within each accelerometer is. "Tilt sensor" was not a term that either party contended required claim construction at the *Markman* stage of this case as governed by the court's local patent rules. The dispute presented now is not between contrary proposed constructions of the term as used in the '385 Patent, but rival contentions as to which portion of Days' Accused Leveling Systems the term applies. This is not a claim construction dispute, but a question of applying a previously undisputed claim term to the particulars of an accused product. For purposes of Day's motion for partial summary judgment, the dispute is material because the determination of that fact impacts the subsidiary determination whether the tilt sensor produces an analog or a

digital signal, which in turn impacts a determination as a matter of law whether Days'

Accused Products possibly infringe claim 1.

In reply, Days repeatedly suggests that claim 1 "means what it says when it

requires the tilt sensor to provide an analog signal to the controller."  [DE 188 at 12; *see*

*also id*. at 7, 8.]  Days is never quoting claim 1 when it makes this assertion.  As

previously indicated, the pertinent language of claim 1 describes "a tilt sensor being

configured to provide analog signals to the controller...."  I declined in my *Markman*

opinion to address whether that language "may encompass digitization occurring

between the tilt sensor and the controller."  [DE 94 at 26-27.]  Days would interpret

claim 1 to encompass only a system in which a tilt sensor's analog signal is "transmitted

all the way to the controller, where it is then converted to a digital signal prior to

processing."  [DE 156 at 17.]

IDS responds by pointing out that an embodiment depicted in FIG. 4 of the '385

Patent depicts a leveling assembly in which the output signals of the tilt sensor are

"digitized before the signals are received and used by the controller."  [DE 180 at 7.]

The specification refers to the digitization of the original signal produced by the tilt

sensor: "The dual axis tilt sensor **32** and the appropriate analog to digital converter

hardware are shown in FIG. 4." '385 Patent, col.15, ll.24-25.  I am not persuaded to grant

Days summary judgment on the basis of its questionable interpretation of claim 1 to

foreclose digitalization occurring between the tilt sensor and the controller.

13

In sum, summary judgment on this point is foreclosed by the parties' material dispute as to what in Days' Accused Product constitutes the "tilt sensor," as the term is used in claim 1 of the '385 Patent.

## Method Claims of the IDS '385 Patent

Infringement of a method claim occurs only when the accused infringer performs every step of an asserted method claim. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed.Cir. 2012). But "a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). And direct evidence of infringement is not required; instead "infringement may be established by circumstantial evidence." *Mirror Worlds*, 692 F.3d at 1359. But "[m]ethod claims are 'not directly infringed by the mere sale of an apparatus capable of performing the claimed process.'" *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1314 (Fed.Cir. 2020), quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed.Cir. 1993).

Claim 26 of the '385 Patent is a method claim as follows:

> 26.     A method for calibrating an attitude correction assembly to recognize when a selected portion of a structure the assembly is installed on is in a desired attitude relative to gravity; the method comprising the steps of:
> providing a structure including jacks actuable to change the attitude of the structure;
> providing an attitude correction assembly on the structure, the assembly including a controller and a tilt sensor, the controller programmed to include a zero mode in which the controller is ready to receive a signal that will instruct the controller to recognize signal values being received from the tilt sensor as indicating that a selected portion of the structure is in a desired attitude;

providing an attitude indicator on the selected portion of the structure, the attitude indicator configured to indicate attitude relative to gravity;

actuating the jacks until the attitude indicator indicates that the selected portion of the structure is in a desired attitude relative to gravity; and

providing an input to the controller indicating that the current set of signals being received from the tilt sensor is the set of signal values that will represent the correct attitude for the controller to reference in future attitude correction operations.

[DE 156-3 at 39, col. 20, ℓℓ.18-43.]

Claim 35 of the '385 Patent is another method claim:

35.    A method for analyzing the attitude of a structure relative to two axes; the method comprising the steps of:

providing a structure including jacks actuable to change the attitude of the structure;

providing a tilt sensor on the structure;

extending one or more jacks until one or more of the jacks contact the ground; and

detecting jack ground contact through tilt sensor indications of a change in the attitude of the structure resulting from jack ground contact.

[DE 156-3 at 40, col. 22, ℓℓ.9-19.]

Let's start with claim 26.  IDS's expert, Dr. Tavakoli, acknowledges that for Days to infringe claim 26 of the '385 Patent would require Days to use an "attitude indicator" placed on a portion of the structure to be leveled, and then use that attitude indicator to set the "reference value" of the leveling system.  [DE 156-2 at 20, 73:23-74:13.]  IDS does not dispute that Days installs less than 1% of the accused leveling systems it sells.  [DE 156-8 at 11, 36:18-21.]  Based on this statistic, Days initially argues in support of its request for a declaratory judgment that its infringement can be no more than *de minimis* so that it is entitled to summary judgment.

15

In opposition to that argument, IDS relies on *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349 (Fed.Cir. 2000), in which the Federal Circuit reviews its history of construing the *de minimis* exception "very narrowly," and cites *Roche Prods, Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 861 (Fed. Cir. 1984), recognizing that "Section 271(a) prohibits, on its face, any and all uses of a patented invention." The *de minimis* exception is a thin one and is limited to infringement "performed for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry." *Nichia Corp. v. Seoul Semiconductor Co., Ltd.*, No. C-06-0162 MMC, 2007 WL 2428040, at *6 (N.D. Cal.  Aug. 22, 2007), quoting *Embrex*, 216 F.3d at 1349.  Days' conduct as a commercial competitor can hardly be characterized in any of these ways.  Days must not be too impressed with its own "*de minimis*" argument. The tell is that it makes no reference to it in its reply.

But what is the evidence that, even in the few instances in which Days installs its accused leveling systems, it uses a bubble level or other attitude indicator.  There is none as best I can tell. Days' expert, Dr. Robert Sturges, observes that four YouTube videos on installation of Days' systems do not show the installer's use of any attitude indicator as part of a calibration step to set the desired attitude relative to gravity.  [DE 156-4 at 15-16.]  Days' May 2018 Installation/Operation/Warranty Guide refers to a "null setting...done at the factory" to indicate when "the coach" is level.  [DE 156-10 at 9.]  If a user (not Days) needs to "reset the null," the Guide instructs "level[ling] the coach by deploying jacks manually, or by simply parking the coach on a level site," and "[u]s[ing] a bubble level on a flat surface in the center of the coach as a reference."  [*Id*.

16

at 10.]  The same language concerning use of a bubble level appears in other user guides for Days' systems.  [DE 168-1 at 11; DE 168-3 at 4.]  The language in the user guides does not support a determination that Days itself uses a bubble level or other "attitude indicator" when it presets the null or in the few instances that it installs a leveling system, as opposed to just deploying the jacks manually with the coach parked on a level site.

IDS cites deposition testimony of Days' corporate designee Jason Loose as support for a finding that Days uses an attitude indicator to set the "null" or "reference value" of the leveling system.  [DE 180 at 28.]  IDS contends that Loose confirmed that a Days installer would set the null as described in the user manuals.  [*Id.*]  Even assuming the user manuals *require* the use of a bubble level (which they do not), Loose's testimony was not as IDS claims.  Loose testified only that if Days was the installer of a leveling system, the null was most likely preset at the factory.  [DE 180-2 at 48.]  Loose's testimony cannot be fairly characterized as describing or agreeing *how* the null would have been preset by Days.

Finally, IDS highlights one video in its opposition, characterizing it this way: "Days' personnel are shown operating Days' leveling system as installed on a motorhome and, in that video, *while showing the bubble level*, the narrator explains how to fine tune the positioning of the coach."  [DE 180 at 28 (emphasis added).]  This is not a fair and reasonable characterization of the video's content.  The video is directed at the user of the leveling system.  The pertinent portion is a demonstration of the system's

17

Auto-Level function, not a setting or re-setting of the null.  The video shows the bubble level *only after* the Auto-Level feature has been run, to confirm that the Auto-Level feature made the coach level.  The video does not show the bubble level being used to set the null, as required by steps 3 and 4 of claim 26.

In short, IDS doesn't meet the challenge of Days's motion with evidence that could support a jury's determination that when installing its accused leveling system, Days uses an attitude indicator to set the "null" or reference value indicating the desired level of the structure to be leveled.  For lack of evidence supporting Days' performance of the third step, Days is entitled to partial summary judgment of noninfringement of claim 26 of the '385 Patent.

As for claim 35, Days contends that in order to infringe method claim 35, "Days must actually install the Accused Product and then operate it to extend jacks and detect ground contact."  [DE 188 at 15.]  Dr. Tavakoli agrees that claim 35 could be infringed by Days only when Days installs and tests, or demonstrates, the accused leveling system.  [*Id*. at 26, 97:3-15.]  Days refers to IDS's "complete lack of proof of Days ever directly infringing this claim as more than 99% of Days' Accused Products are installed by companies other than Days."  [DE 188 at 15.]  Days' own language demonstrates not a "complete lack of proof" but instead the existence of evidence of a statistically small (but not non-existent) incidence of infringement by Days.  As discussed above, Days' argument for a *de minimis* exception to infringement has been abandoned and found to be otherwise inapplicable.  If the existing evidence could support a jury determination

that 1% of the time Days infringes claim 35, then Days is not entitled to partial summary judgment of noninfringement on that claim.

### Claims 18, 19 and 20 of the '924 Patent

Claims 18, 19 and 20 of the '924 Patent are also method claims. Here's what they say:

> 18.  A method for calibrating an attitude correction assembly to recognize when a selected portion of a structure the assembly is installed on is in a desired attitude relative to gravity; the method comprising the steps of:
>
> providing a structure including jacks actuable to change the attitude of the structure;
>
> providing an attitude correction assembly on the structure, the assembly including a controller and a tilt sensor;
>
> actuating the jacks until the structure is in a first desired attitude;
>
> providing an input to the controller indicating that the current set of signals being received from the tilt sensor is a first set of signal values that will represent the first desired attitude for the controller to reference when selected in future attitude correction operations;
>
> actuating the jacks until the structure is in a second desired attitude relative to gravity; and
>
> providing an input to the controller indicating that the current set of signals being received from the tilt sensor is a second set of signal values that will represent the second desired attitude for the controller to reference when selected in future attitude correction operations.
>
> 19.  The method of claim 18 in which the step of providing an attitude correction assembly includes providing a controller programmed to include a zero mode in which the controller is ready to receive a signal that will instruct the controller to recognize signal values being received from the tilt sensor as indicating that a selected portion of the structure is in a desired attitude.
>
> 20.  The method of claim 18 including the additional steps of:
>
> providing an attitude indicator on the selected portion of the structure, the attitude indicator configured to indicate attitude relative to gravity;
>
> actuating the jacks until the attitude indicator indicates that the selected portion of the structure is in a desired attitude relative to gravity; and

19

causing the controller to store signal values that the controller
receives from the tilt sensor once the structure is in the desired attitude.

[DE 156-9 at 38, col. 20, $\ell\ell$.1-42.]

IDS's expert, Dr. Tavakoli, expresses the view that in order to infringe these asserted method claims Days would have to set the reference value or "null" a first time and a second time.  [DE 156-2 at 27, 102:13-103:8.]  Citing Dr. Tavakoli's deposition testimony, Days contends that IDS has no evidence to support a factual determination that Days has ever set the reference value twice on a given Accused Product.  [DE 156 at 12-14.]

IDS's best evidence that Days ever set the reference value twice comes from a single question and answer in the deposition testimony of Days' COO, Jason Loose. The question posed to Loose was:  "And on systems that were installed by Days, do you recall whether anybody reset the null – anybody from Days would have reset the null on a system that they originally installed and set the null in the first place?"  [DE 156-8 at 21, 73:4-8.] Pardon the pun, but his answer was rather loosey goosey. Loose answered:  "For service, probably."  [*Id.*, 73:9.]  That testimony is indefinite and at best, minimally adequate to provide a preponderance of evidence in support of the necessary occurrence.  But in all events that thin reed does not meet another requirement for IDS's effort to demonstrate infringement, namely that Days practiced the claimed method after April 26, 2005, the issuance date of the '924 Patent.  Days' system was developed in 1998 and was being sold well before 2005.

20

Less supportive still are two videos, Exhibits I and J, cited by IDS.  [DE 180 at 28-29.]  In the videos, Days describes how to set or reset the null, but neither shows Days' personnel initially setting the reference value and then resetting it on the same system, as IDS concedes is necessary to infringe these method claims.  The lack of evidence sufficient to support a finding of infringement of these claims entitles Days to partial summary judgment of noninfringement of claims 18, 19 and 20 of the '924 Patent.

**ACCORDINGLY:**

Lippert Components and Innovative Design Solutions' Motion to Strike Certain Evidence Relied Upon by Days Corporation [DE 178] is DENIED AS MOOT.

Days Corporation's Motion for Partial Summary Judgment of Non-Infringement [DE 154] is GRANTED IN PART AND DENIED IN PART as follows.

Partial summary judgment is DENIED on Days' prayer for declaratory judgment of non-infringement as to claims of the '385 and '924 Patents no longer asserted by defendants Lippert and Innovative Design Solutions, as the court finds with respect to them there no longer exists an Article III case or controversy supporting the exercise of jurisdiction.

Partial summary judgment is GRANTED with respect to Counts I and II of Days' Second Amended Complaint on Days' prayer for declaratory judgment of non-infringement as to Lippert/IDS's claims that Days infringed the '385 and '924 Patents by the doctrine of equivalents or indirectly by contributory infringement or inducement of infringement.

Partial summary judgment is DENIED on Days' prayer for declaratory judgment of non-infringement as to Lippert/IDS's claims that Days infringed claims 1, 7 and 12 of the '385 Patent.

Partial summary judgment is GRANTED with respect to Count I of Days' Second Amended Complaint on Days' prayer for declaratory judgment of non-infringement as to Lippert/IDS's claim that Days infringed claim 26 of the '385 Patent.

Partial summary judgment is DENIED on Days' prayer for declaratory judgment of non-infringement as to Lippert/IDS's claims that Days infringed claim 35 of the '385 Patent.

Partial summary judgment is GRANTED with respect to Count II of Days' Second Amended Complaint on Days' prayer for declaratory judgment of non-infringement as to Lippert/IDS's claims that Days infringed claims 18, 19 and 20 of the '924 Patent.

SO ORDERED this 1st  day of September, 2021.

_____ /s/ Philip P. Simon_____
**United States District Judge**