UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAYS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV208-PPS /MGG |
| | ) | |
| LIPPERT COMPONENTS, INC. and | ) | |
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

_____ _consolidated with_ _____

| | | |
|---|---|---|
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV327-PPS/MGG |
| | ) | |
| DAYS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Days Corporation has filed a motion seeking a summary judgment that the asserted claims of Innovative Design Solutions' U.S. Pat. Nos. 6,584,385 and 6,885,924 are invalid because they are anticipated by Days' "Secret Prior Art." [DE 157, 160.]

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with

the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).  Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Novelty is historically an attribute required for patentability.  As applicable in this case, 35 U.S.C. §102(g) may be invoked to invalidate a patent to the extent that, prior to the patentee's invention, "the invention was made in this country by another inventor who had not abandoned, suppressed or concealed it."[1]  Because §102(g) does not require the prior invention to be published or disclosed to the public, it is sometimes referred to as "secret" prior art, as Days does here.  The statute provided that:  "In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice from a time prior to conception by the other."  §102(g)(2).  A challenge to a patent claim's validity on grounds of anticipation "requires clear and convincing evidence that 'each and every element is found within a single prior art reference, arranged as claimed.'"  *ATEN International Co., Ltd. v. Uniclass Technology Co.,*

---

[1] The America Invents Act (AIA), effective March 16, 2013, altered U.S. patent law from a first-to-invent jurisdiction to a first-to-file jurisdiction. The patents involved in this case all predate the AIA.

*Ltd.*, 932 F.3d 1364, 1368 (Fed.Cir. 2019), quoting *Summit 6, LLC v. Samsung Elecs. Co.,* 802 F.3d 1283, 1294 (Fed.Cir. 2015).

Testimony in support of an anticipation theory "is insufficient if it is merely conclusory," and must instead "explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab Comput. Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed.Cir. 2002). Anticipation is a question of fact, as is the "question of whether inventor testimony asserting priority is sufficiently corroborated." *E.I. du Pont De Nemours & Company v. Unifrax I LLC,* 921 F.3d 1060, 1068 (Fed. Cir. 2019). By contrast, "'[p]riority, conception, and reduction to practice are questions of law which are based on subsidiary factual findings.'" *Id.*, quoting *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).

## Material Facts

Both IDS's '385 and '924 Patents claim priority to a provisional application date of October 1, 1999. [DE 160-1 at 2; DE 160-2 at 2.] Days contends that June 1999 is the earliest possible date of IDS's conception of the asserted claims. This is based on Days' characterization of what it calls the "IDS Memo" as the first written document allegedly evidencing conception of the IDS Patents. [DE 160-3.] The document, titled "Generic 2 Axis Zeroing (Leveling) System," is undated and discloses no authorship. [*Id.*] Without citation to any evidence, Days says that IDS has suggested that the IDS Memo was written in June 1999. [DE 160 at 7.]

IDS characterizes its June 1999 document as memorializing not mere conception of an automated leveling system, but its reduction to practice. [DE 164 at 13.] IDS agrees that the document, which it refers to as "the RTP Document," dates to June 10, 1999 (based on metadata for the document), but contends that it "describes how IDS had constructed a vehicle attitude correction system prototype that met the substance of each of the Asserted Claims." [*Id*.] The IDS Memo/RTP Document describes IDS's demonstration of the device for customers and an intention to launch production of the system in the fall of 1999. [DE 165-7 at 2.]

Inventor Robert Ford, a founder of IDS and the Chief Technology Officer at Lippert, testified in his deposition that he is the author of the IDS Memo, and does not know when he created it. [DE 160-4 at 3-4, 52:21-53:6.] Ford testified that he could not identify any prior documents describing the invention although he believes some exist, and that he thinks the IDS Memo is the "first document" describing the invention in its entirety. [DE 160-4 at 4; 53:7-25.]

In his declaration, Ford asserts that "[a]t least as early as January 16, 1998, I, along with John Manfreda and Shawn Haley, conceived of the…attitude correction assembly as discussed and claimed in the '385 Patent." [DE 165 at ¶13.] Ford attests that his group "began testing two-axis proportional tilt sensors in late 1997 to early 1998 to determine whether those types of sensors could accommodate the various functions we had envisioned to level a vehicle." [*Id.* at ¶16.]

Here's what else Ford had to say:

4

- The testing was conducted "specifically…to investigate our idea that the output signals of such a sensor, which are proportional to the magnitude of tilt sensed by the sensor, could be used to automatically level a recreational vehicle to the precision expected in the industry."  [*Id*.]

- Ford declares that metadata for documents containing sensor calibration testing data indicates that the documents were last modified on January 16, 1998.  [*Id*. at ¶21.]

- Ford declares that metadata for "bills of materials" listing components and materials included in a test board for tilt sensors indicate that the documents were last modified on August 10, 1998.  [*Id*. at ¶¶25-27.]

- A purchase order for printed circuit boards used in IDS's development of its leveling system is dated December 11, 1998.  [*Id*. at ¶28.]

- Ford finally asserts that IDS had reduced the leveling system to practice and constructed a prototype used to demonstrate the system to potential customers at least as early as June 10, 1999.  [DE 165 at ¶30.]

Relying principally on two documents, Days contends that its Secret Prior Art was conceived of no later than August 1998, when it "approached TouchTronics to modify the [preexisting manual] leveling system to create an automatic leveling system." [DE 160 at 8.]  The first document, characterized as a specification document and referred to by Days as "Days Presentation," is undated.  [DE 160 at 8; DE 160-8.]  Days offers no evidence as to the author of the document, or when it was created.

Days asserts that using its documentation of ideas about an automatic system, TouchTronics, which Days describes as "one of the inventors of the Days Prior Art," prepared the more detailed "Days Preliminary System Architecture" document. [*Id*.; DE 187 at 15.]  That document is titled "Confidential Proposal  Equalizer Autolevel System"

5

and is attributed to TouchTronics, Inc. and dated September 19, 1998, with an additional internal date of "August 20, 1998 Rev int." [DE 160-9.]

Mark Eichhorn gave a deposition as Days' corporate designee, and testified that he did not know how far in advance of September 18, 1998 did Days' affiliate Equalizer Systems approach Touchtronic concerning development of an automated leveling system. [DE 160-6 at 13-14, 43:24-45:17.] Eichhorn could only express an "assumption" that it "would have been months" earlier. [DE 160-6 at 14, 45:13-14.]

Alice Poseley, a founder of TouchTronics, testified in her deposition as its corporate designee, that TouchTronics' work with Equalizer to develop an automated leveling system "started probably in 1997," but she has no records of that. [DE 160-7 at 5, 11:24-12:7.] Because she "wrote" her system on August 20, 1998, Poseley testified that she must have received Days' specification "a couple months prior." [*Id*. at 26, 94:4-10.]

Poseley testified that a working prototype of the auto leveling system existed by "around June or July of 1999." [DE 160-7 at 27, 99:15-18.] Later in her deposition after reference to additional documents, Poseley testified that prototypes would probably have been completed in November or December 1999. [*Id*. at 28, 101: 3-7.]

## Discussion

First, let's lay out some basics on the doctrine of anticipation. Anticipation requires a determination that the accused's invention was prior art. "Under §102(g), [Days] can establish that its Prototype was prior art by proving 'either that it reduced its invention to practice first *or* that it conceived of the invention first and was diligent in

6

reducing it to practice.'" *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 974-75 (Fed.Cir. 2014) (emphasis in original). *See also ATI Techs. ULC v. Iancu*, 920 F.3d 1362, 1369-70 (Fed. Cir. 2019); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001). Days' motion asserts the latter theory: "the Days system was conceived of first, was diligently reduced to practice and therefore anticipates under 35 USC §102(g)." [DE 160 at 6.] A finding of anticipation therefore depends on which party's leveling system was conceived of first. After priority of conception is established, anticipation analysis requires any necessary claim construction of asserted claims, and then comparison of each asserted claim to the prior art reference element by element. *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

As the movant, Days is "required to identify clear and convincing evidence of the factual underpinnings of...conception." *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 U.S. 1052, 1063 (Fed. Cir. 2005). "Conception defines the legally operative moment of invention under §102(g)" and "is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.'" *Id.* at 1063, quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). To qualify as "conception," the inventor must have "a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed.Cir. 1994), quoted in *Invitrogen*, 429 F.3d at 1063.

7

The Federal Circuit has held that "'an inventor's testimony, standing alone, is insufficient to prove conception – some form of corroboration must be shown.'" *NFC Technology, LLC v. Matal*, 871 F.3d 1367, 1371 (Fed. Cir. 2017), quoting *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed.Cir. 1993). "[B]ecause of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony concerning his understanding of the invention." *Invitrogen*, 429 F.3d at 1065. No particular species or quantum of corroborating evidence is required. *NFC Technology*, 871 F.3d at 1372. But corroboration of an inventor's testimony requires evidence beyond the inventor's own statements and documents. *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295 (Fed. Cir. 2018), citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 577 (Fed.Cir. 1996). A "rule of reason" applies, that is, whether the evidence considered as a whole supports the credibility of the inventor's testimony. *Id*. Where a document is cited in support, "[t]hat document is not itself a conception, for conception occurs in the inventors' minds, not on paper." *Burroughs Wellcome*, 40 F.3d at 1230.

Applying these standards, can the parties' rival conceptions of an automated leveling system be determined as a matter of law based on undisputed material facts, as summary judgment would require? Has Days carried its burden to establish prior invention by clear and convincing evidence? *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir. 2001). The answer to both of these questions is plainly "no," and therefore I must deny Days' motion for summary judgment based on anticipation.

Days contends that the undisputed material evidence demonstrates that Days and TouchTronics developed a leveling system in August/September 1998 and reduced it to practice over the following few years. Days' anticipation argument continues with the contention that the earliest arguable conception date of IDS's patented leveling system is June 1999, when the "IDS Memo" (or "RTP Document") was created.

In examining the evidence on when each party conceived its invention, I must bear in mind that Days has the burden of establishing that it was first out of the gate by *clear and convincing* evidence — an elevated standard of proof to be sure. And here, the evidence before me is just too mushy to provide an undisputed or clear and convincing basis for determining the relative timing of Days' (actually TouchTronics') conception of an automatic leveling system. No witness offers testimony as to the date by which Days or TouchTronic had achieved the kind of specific, settled idea that could constitute conception of its system.

The earliest date referenced in the evidence is the internal date of August 20, 1998 in the TouchTronics' document Days refers to as "Days Preliminary System Architecture," which also bears the date September 18, 1998. [DE 160-9.] Neither Mark Eichhorn, Alice Poseley, nor any other witness testifies to the date of the presumably earlier "Days Presentation" specification document which Days says it provided to TouchTronics and which served as the basis for TouchTronics' work. But if that Days Presentation document is found to evidence conception, its timing appears to predate the TouchTronics document by an uncertain period of time that Poseley testified was at

9

least "a couple months prior." [DE 160-7 at 26, 94:4-10.] So the evidence doesn't clearly support August 20, 1998, September 18, 1998, or any particular earlier date as Days' conception of the automatic leveling system.

On the other hand, Days contends that the earliest possible date of IDS's conception of the asserted patent claims is June 1999, when the "Generic 2 Axis Zeroing (Leveling) System" document was produced. This is the document the parties each offer a loaded description of — Days calling it the "IDS Memo" as though it is the entirety of IDS's capture of its invention and IDS referring to it as the "RTP Document" meaning the "Reduction to Practice Document," suggesting that IDS had a fully formed conception of the invention some time before.

If this June 1999 date is used, then any of the possible dates by which Days conceived of its system would be prior. But IDS offers some evidence of earlier conception, in the form of Robert Ford's declaration that as of mid-January, 1998, he and co-inventors Manfreda and Haley had conceived of the system later claimed in the '385 Patent, an assertion supported by the metadata associated with various testing-related documents dating to January 16, 1998 and August 10, 1998. The admissibility and weight of Ford's statements explaining and construing the metadata and testing documents are disputed by Days. *Kolcraft Enterprises, Inc. v. Graco Children's Products, Inc.*, 927 F.3d 1320, 1325 (Fed.Cir. 2019) (corroboration inadequate where based on metadata that is not part of the record and that is merely discussed in testimony of inventor.) In any event, the testing documents are limited in their scope and do not

10

help to establish that (or when) the IDS inventors reached a definite and permanent idea of the complete and operative invention. Nonetheless, the IDS Memo's references to the demonstration of a prototype for customers corroborates Robert Ford's assertion that by June 10, 1999, IDS had not merely conceived of its leveling system but reduced its conception to practice. This inference challenges Days' characterization of the "IDS Memo" in June 1999 as the earliest possible conception date for IDS's system.

All this is to say that the evidence on the priority of conception between the rivals is not undisputed and, more to the point, does not support a determination of priority by the court as a matter of law. Both parties' evidence, even if admissible, is indefinite as to chronology, and fails to demonstrate when the parties' respective inventors reached the "legally operative moment" of invention. Further, the parties' corroborative evidence beyond the testimony of inventors is weak and not itself independent of the inventors as the Federal Circuit suggests is necessary. *In re Garner*, 508 F.3d 1376, 1380 (Fed. Cir. 2007) ("an inventor's testimony as to the facts of invention must be corroborated by independent evidence," such as testimony other than by the inventor or evidence of facts independent of information received from the inventor).

Days has not carried its burden of offering clear and convincing evidence of the factual underpinnings of conception that would enable a summary determination of priority of invention as between the parties. Instead, the issue of priority of conception must be determined by a jury based on its sifting and weighing of the disputed evidence. Undisputed evidence does not enable me to conclude when either party's

11

inventors reached "a definite and permanent idea of the complete and operative invention" that was "so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003) (internal citations omitted). Because Days is unable to conclusively establish priority of conception, which is the first element of anticipation, I need not address the logically subsequent question whether Days' leveling system contained (and therefore anticipated) each element of the patent claims asserted by IDS.

**ACCORDINGLY:**

Days Corporation's Motion for Summary Judgment of Invalidity [DE 157] is DENIED.

SO ORDERED this 1st day of September, 2021.

/s/ Philip P. Simon
**United States District Judge**