UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAYS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV208-PPS /MGG |
| | ) | |
| LIPPERT COMPONENTS, INC. and | ) | |
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

_____ *consolidated with* _____

| | | |
|---|---|---|
| INNOVATIVE DESIGN | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV327-PPS/MGG |
| | ) | |
| DAYS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Days Corporation, a counter-defendant in claims of patent infringement by Innovative Design Solutions, has filed a motion for partial summary judgment on certain damages issues. [DE 155.] IDS accuses Days of infringing its '385 and '924 Patents. By separate order, I am affirming the ruling of Magistrate Judge Michael G. Gotsch, Sr. denying IDS leave to amend its complaint for infringement to add as a co-plaintiff Lippert Components (sometimes referred to as LCI), which is purportedly a licensee of the patents.

## **Constitutional Standing**

There is another reason to affirm Judge Gotsch's ruling which I alluded to in my opinion affirming Judge Gotsch. Allowing Lippert in the case at this late stage would be futile because, as explained below, Lippert has no standing to pursue lost profits for any patent infringement by Days. Here's what I said in that earlier opinion denying Lippert and IDS's motion for review of Judge Gotsch's decision:

> In a separate opinion and order ruling on Days' motion for partial summary judgment as to damages, I explain my conclusion that the sort of limited exclusive license Lippert claims does not support standing to make claims for infringement damages. Given that conclusion, futility also supports denial of IDS's motion for leave to amend to add Lippert as a co-plaintiff. "District courts may deny leave to amend...where there is a good reason to do so: 'futility, undue delay, prejudice, or bad faith.'" *R3 Composites Corp. v. G&S Sales Corp.* 960 F.3d 935, 946 (7th Cir. 2020), quoting *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019). This conclusion was of course not available to Judge Gotsch at the time he made his analysis, but bolsters my decision not to set aside Judge Gotsch's ruling.

[DE 234 at 8.]

Before getting into the details of why allowing Lippert into the case at this point would be futile, let's first set out some legal principles applicable to the necessary analysis. A "patentee" has standing to maintain a claim for patent infringement. 35 U.S.C. §281. Generally speaking, a party must have held legal title to a patent at the time of infringement in order to seek money damages for patent infringement. *Lone Star Silicon Innovations LLC v. Nanya Technology Corporation*, 925 F.3d 1225, 1229 (Fed.Cir. 2019). "Mere licensees" do not meet the statutory definition of "patentee" entitled to

bring a civil action for infringement. *Lone Star*, 925 F.3d at 1229; *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318-19 (Fed.Cir. 2009).

Distinguishing between an assignee successor in title to a patent, on the one hand, and a mere licensee, on the other, involves examining the totality of the agreement to determine whether the party establishes that "it obtained all substantial rights in the patent." *Lone Star*, 925 F.3d at 1229. "If a party cannot bring suit in its own name, it may still bring suit along with the patentee so long as it possesses 'exclusionary rights.'" *Id.*, quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1350 (Fed.Cir. 2007). "Parties that hold the exclusionary rights are often identified as exclusive licensees, because the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention." *Morrow*, 499 F.3d at 1340.

In *Morrow*, the Federal Circuit identified "three general categories of plaintiffs" for purposes of standing to bring a patent infringement suit: "those that can sue in their own name alone; those than can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." *Morrow*, 499 F.3d at 1339. The first category with unquestionable standing to sue in their own right "includes plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights – the entire bundle of sticks." *Id.* LCI does not claim to belong to this category. [DE 182 at 19.]

3

*Morrow* defines the second category as plaintiffs that "hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Morrow* 499 F.3d at 1340.  The grantees of such rights "are often identified as exclusive licensees, because the grant of an exclusive license to make, sue, or sell the patented invention carries with it the right to prevent others from practicing the invention."  *Id*. But in order to avoid "the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer," plaintiffs in this category must generally be joined in the litigation by the patentee who transferred the exclusionary interests. *Id*.

The third *Morrow* category "includes those that hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes to meet the injury in fact requirement."  *Id*.  Such parties lack "constitutional standing" even to join a suit with the patent holder because they suffer no legal injury from infringement.  *Id*. at 1341.  The issue thus becomes whether LCI falls into the second or third of the categories defined in *Morrow*.

"For a party to have standing, it must satisfy constitutional requirements and also demonstrate that it is not raising a third party's legal rights."  *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017), citing *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004).  Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing ... in the same way as any other matter on which the plaintiff bears the burden of proof ...." *Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).  Because standing is

4

"an indispensable part of the plaintiff's case," it must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the summary judgment stage, "the plaintiff can no longer rest on...mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion must be taken as true." *Id*.

Lippert forthrightly acknowledges that it "is not *the* exclusive licensee to all of the rights in U.S. Patent Nos. 6,584,385 and 6,885,924 (the 'IDS patents')." [DE 182 at 8.] Nonetheless, Lippert agues that it has exclusive rights to sell the technology covered by the IDS patents, which supports its entitlement, as a co-plaintiff with the patentee, to make claims for damages for infringement. [DE 182 at 21.] Here's what Lippert and IDS tell me in their brief: "LCI is *not the exclusive licensee* of the IDS patents such that LCI can sue or be sued on the IDS patents without participation of IDS. As the *exclusive seller*, LCI has the *exclusive right to sell* the covered products and is a proper co-plaintiff." [DE 182 at 19 (emphasis added).] Despite this assertion, LCI acknowledges, as it must, that there exists no written agreement under which IDS has granted LCI exclusive rights of any sort with respect to the patents.

In determining what rights have been granted by a patent holder, the standard is whether the evidence as a whole convinces the trier of fact that there was mutual intent to transfer and vest exclusive rights. *Sanofi-Aventis Deutschland GMBH v. Glenmark Pharmaceuticals Inc.*, 748 F.3d 1354, 1364 (Fed.Cir. 2014), citing *Weinar v. Rollform Inc.*, 744

5

F.2d 797, 807 (Fed.Cir. 1984).  LCI and IDS claim that "the record clearly establishes that LCI/IDS is the exclusive seller of the covered products, not the owner or the exclusive licensee of all rights of the IDS patents." [DE 182 at 21.] So what evidence is offered on the existence of an admittedly unwritten license and its scope?  Candidly, very little.

First, there is some persuasive evidence that Lippert is *not* an exclusive licensee—notably Lippert's own past admission of that fact.  Days cites to statements by various Lippert representatives, denying that Lippert claimed broad rights in the IDS patents.  Those statements include the declaration from none other than Lippert's own General Counsel, P. Shawn Lewis, filed by Lippert in support of a motion to dismiss. Here's what Mr. Lewis told me at the time:

> 4. Lippert Components, Inc. is neither the owner nor the exclusive licensee of either of the '385 or '924 patents.
> 5. There is no written agreement licensing any rights in the '385 or '924 patents to Lippert Components, Inc.

[DE 19-1 at 1.]  Lippert now tries to minimize the significance of these declarations by invoking the context, namely that the declaration was produced to support Lippert's position that it could not be sued alone without the patentee, IDS, and addressed only the issue "whether LCI had *all of* the exclusive rights in the IDS patents." [DE 182 at 8 (emphasis added).]   The parties similarly wrangle over deposition testimony by Nick Keim, LCI plant controller and director of supply chain for RV products, who agreed with Lewis that LCI is not the exclusive licensee of either patent but also testified that LCI has exclusive rights to sell the product.  [DE 182-6 at 63 (62:8-21).]

6

For its part, LCI and IDS cite other deposition testimony by Nick Keim, that "I believe LCI has the right, the exclusive rights to sell the product." [DE 182 at 9, citing DE 182-6 at 63 (62:20-21).] This species of conclusory testimony is entirely unhelpful in elucidating the issue. Keim also testified, once again in a conclusory way, that sales records indicate that LCI has been "the exclusive seller of the patented products." [DE 182 at 11, citing DE 182-6 at 64 (63:17-21).]  LCI and IDS also cite these exchanges at Keim's deposition:

> Q. ... Within the LCI family of companies, LCI, IDS, within those companies, who has the right to sell the patented product?...
> A. LCI.  [DE 182 at 11, citing DE 182-6 at 69 (68:4-8).]
>
> A. ... Just let me know your understanding of who has the right to sell those products ... in the LCI family of companies.
> A. LCI.
> Q. Anybody else?
> A. Not that I'm aware of.  [DE 182 at 11, citing DE 182-6 at 69 (68:16-23).]

Elsewhere in the deposition, Keim refers to LCI as the "sole" or "exclusive" seller of the patented products.  [DE 182 at 20, citing DE 182-6 at 25-26 (24:21-25:6).] None of this testimony makes reference to a license or to its scope, as opposed to the possible factual happenstance that in reality only LCI has sold the patented products.  Elsewhere in the same deposition, Keim's testimony points in the opposite direction, with him agreeing that LCI is not the only company that can sell patented products, because a company known as Quadra also can.  (Quadra uses IDS/Lippert controllers for its leveling system.) *See, e.g., id*. at 27-28 (26:19-27:5), 66 (65:18-66:2).

The Declaration of Andy Murray, Lippert's Chief Sales Officer, is also cited by LCI and IDS: "While there is no written agreement licensing any rights in the '385 patent or '924 patents from IDS to LCI, LCI has the exclusive right to sell products covered by the '385 and '924 patents and has been the exclusive seller of products covered by the '385 and '924 patents since LCI's acquisition of IDS in 2014." [DE 142-3 at ¶4.] John Manfreda, in his deposition testimony as corporate representative of IDS, agreed "[a]bsolutely" with the statement that "by the mere fact of Lippert's ownership [of IDS], there's an implied license that Lippert can use all of IDS's patents." [DE 158-8 at 5 (29:4-7).]

Lippert agrees with Manfreda's reasoning, claiming that the "course of conduct in which IDS transfers controller kits to LCI for purposes of selling them or products incorporating them as well as the corporate relationship between LCI, the ultimate parent company, and IDS, a separate company that is wholly owned by LCI, establishes an exclusive licensee relationship in which LCI is the exclusive seller." [DE 182 at 19.] Lippert cites no legal authority supporting that reasoning which, if true, would lead to the startling result that adherence to the corporate form is somehow unnecessary in the context of granting a license. In any event, Manfreda knows of no terms of the implied license he believes exists, and agreed that it is "possible for IDS to provide a license to another company." [DE 158-8 at 6 (30:5-7 and 31:9-14).]

Given the limitations of the evidence concerning Lippert's purportedly exclusive license, even if presumed to be true, a finding of standing as a plaintiff for infringement

8

claims is not supported. LCI and IDS cite *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed.Cir. 1995), for the proposition that "a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee." [DE 182 at 21.] But *Rite-Hite* itself recognizes that this is true only "[u]nder certain circumstances," and those presented here by LCI and IDS are not among them. *Id.* The required circumstances are an exclusive license, but one by which patent rights, and not merely sales territory, are granted.

As the Federal Circuit said in rejecting the standing of sellers to assert patent claims in *Rite-Hite*, the contracts with the patent holder only permitted the sellers to solicit and make sales of patented products within an exclusive sales territory, but "any 'exclusivity' related only to sales territories, not to patent rights." *Rite-Hite Corp.*, 56 F.3d at 1553. The exclusive rights associated with patent enforcement were missing: "Most particularly, the [sellers] had no right under the agreements to exclude anyone from making, using, or selling the claimed invention," and "Rite-Hite had no obligation to file infringement suits at the request of [a seller] and the [sellers] had no right to share in any recovery from litigation." *Id*.

In *Weinar v. Rollform Inc.*, 744 F.2d 797, 807 (Fed.Cir. 1984), the Federal Circuit held that an oral contract is sufficient to confer co-plaintiff standing when the acts of infringement injured all of the plaintiffs and when "[m]ultiple recoveries are neither recoverable nor here involved" because all entities in the license chain are joined in the action. In *Weinar*, the Federal Circuit affirmed a distributor's entitlement to recover

9

damages for patent infringement. There the distributor, Gypsum, was said not to be a "bare licensee" because its right to sell was exclusive, "like that of the licensees in *Western Electric* [*Co. v. Pacent Reproducer Corp.*, 42 F.2d 116 (2nd Cir. 1930)], who were held properly joined as plaintiffs because they were exclusive licensees in particular areas." *Weinar*, 744 F.2d at 807. *Weiner* held that the jury was "at liberty to believe the testimony that an oral contract existed between Weinar and Gypsum, under which Gypsum had an exclusive right to sell as sole distributor in the United States." *Id.*

*Rite-Hite* distinguishes *Weinar*, holding that in the latter, the exclusive licensee shared the property rights represented by a patent. By contrast, in *Rite-Hite*, the distributors' contracts granted only an exclusive sales territory, did not mention the word "patent," and conferred no right to "exclude anyone from making, suing, or selling the claimed invention," and not even the right to "exclude from their respective territories other ISOs (independent sales organizations), third parties, or even Rite-Hite itself." 56 F.3d at 1553. As *Rite-Hite* holds: "The grant of a bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others." *Id.*

*Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1481 (Fed.Cir. 1990), credits *Weinar* with holding that "an exclusive vendor of a product under a patent *could be* a co-plaintiff in an action for patent infringement" (emphasis added). *Kalman* itself holds that "[w]hen the sole licensee...has been shown to be directly damaged by an infringer in a two supplier market, and when the nexus between the sole licensee and the patentee is so

clearly defined as here, the sole licensee must be recognized as the real party in interest." 914 F.2d at 1482. But "[t]o qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity." *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481 (1484 (Fed. Cir. 1998).

The Federal Circuit's later decision in *Sanofi-Aventis* distinguished *Rite-Hite*, in which there was no evidence that the distributors who would be plaintiffs had the right to exclude others under the patent. *Sanofi-Aventis* involved would-be plaintiffs who had "fully exclusive rights" in the United States, and so weren't limited as the *Rite-Hite* distributors were. The Federal Circuit affirmed the district court's finding that the plaintiffs intended the grantees to have exclusive rights, which supported their participation as plaintiffs in the litigation. The record before me contains no evidence that IDS granted exclusive patent rights to Lippert, as opposed to merely that Lippert was in fact the only distributor of IDS-patented products.

The threadbare evidence relied upon by LCI and IDS to establish the existence of an exclusive license is insufficient to establish more than a right to sell patented products. Although a writing is not legally necessary, the majority of the cases determining the adequacy of an exclusive license to support infringement standing involve a licensing agreement in which the necessary terms are plainly stated. By contrast, here the testimony of Nick Keim and John Manfreda offers no terms of the claimed license beyond rights to sell, and certainly nothing about rights to exclude

11

others or sharing of any other rights of patent. "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite*, 56 F.3d at 1552.

In sum, because Lippert's evidence would not support a reasonable determination that it is an exclusive licensee with standing to pursue infringement damages, reversing Judge Gotsch would allow Lippert in as a plaintiff only to toss it out again on summary judgment. Days' motion for partial summary judgment as to damages will be granted with respect to the determination that Lippert is without standing to pursue a patent infringement action against Days for the '385 and '924 patents.

## Remaining Issues

There are several other arguments made in Days' motion. Days contends that Lippert's lost profits analysis fails to account for all market participants, including Quadra Manufacturing. [DE 158 at 14.] Because Lippert is not being permitted to become a co-plaintiff with its own claims for infringement damages based on lost profits, this argument is moot.

Next, Days argues that Lippert and IDS fail to offer an adequate damages analysis for Days' alleged violation of the method claims of the '385 and '924 Patents, which was *de minimis*, if it can be proved at all. Few claims of infringement of the

method claims survive my ruling on Days' summary declaratory judgment for non-infringement. [DE 231.] But Days does not persuade me that I can eliminate the possibility of an evidentiary showing sufficient to support damages for Days' infringement of the remaining method claim, namely claim 35 of the '385 Patent. [*Id*. at 18-19.] If such a showing is made, however, IDS persuasively contends that its damages expert's method of calculating a reasonable royalty could be applied to compute IDS's damages for infringement of the remaining method claim. [DE 182 at 12.] *See* Expert Report of John R. Bone, DE 184 at 57.

The final issue of Days' motion for partial summary judgment as to damages is Days' contention that IDS is "only entitled to damages on the patented controller sold and not the unpatented entire leveling system as the controller is the smallest saleable unit." [DE 158 at 5.] IDS responds that "Mr. Bone performed a damages calculation that determines the amount of reasonable royalties due based on the number of controller kits sold (since there is only one controller included per automatic leveling system)." [DE 182 at 26.] Days' final argument is rejected due to its faulty premise. IDS has in fact offered a damages analysis "based only on the economics of IDS which only sold controller kits and not the entire leveling system." [*Id*.]

Days has also filed a related motion to strike the second supplemental report of IDS's damages expert John Bone, on the ground that it was untimely served more than 6 months after the deadline. In the alternative, Days seeks to re-depose Bone at IDS's expense. The parties exchanged damages expert reports and deposed both experts in

13

September 2020. [DE 193 at 5.] A Second Supplemental Report of IDS's damages expert was served on Days' counsel on November 24, 2020. [*Id*.] Days objects that this occurred "more than two months after both damages experts were deposed and five months after all expert reports were exchanged, six weeks after Days filed a motion for summary judgment on damages, and after IDS/LCI has responded to that motion." [*Id*.]

As IDS notes, "[o]nly the lost profits analysis as applicable to LCI is implicated by Days' Motion to Strike." [DE 202 at 4.] Because LCI is not being permitted to be added as a co-plaintiff with its own claims for lost profit damages, I will deny the motion to strike without prejudice to its being refiled if Days can demonstrate the continued significance of the matter in view of the current posture of the litigation after my rulings on all the summary judgment motions and the denial of the appeal of Judge Gotsch's order disallowing amendment to add LCI as a party-plaintiff.

**ACCORDINGLY:**

Days Corporation's Motion for Partial Summary Judgment as to Damages [DE 155] is GRANTED IN PART as to Lippert's lack of standing to be a co-plaintiff and to recover lost profits damages. In all other respects, the motion is DENIED.

Days Corporation's Motion to Strike Second Supplemental Expert Report of John Bone [DE 192] is DENIED WITHOUT PREJUDICE as explained in the attached opinion.

14

Days Corporations' Motion for Hearing [DE 162] is DENIED.

SO ORDERED this 1st day of September, 2021.

                                                /s/ Philip P. Simon
                                                **United States District Judge**